UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X    CV-12-803
DAVID STARK

                            Plaintiff,

      -against-

DETROIT DIESEL CORP. and ATLANTIC DETROIT
DIESEL ALLISON, LLC

                           Defendants.
------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

                                          GLYNN MERCEP AND PURCELL, LLP
                                          Attorneys for the Plaintiff
                                          David Stark
                                          North Country Road
                                          Post Office Box 712
                                          Stony Brook, New York 11790
                                          (631) 751-5757

On the Brief:

    Timothy B. Glynn
    Scott MacLagan

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| 1. | Table of Cases | i |
| 2. | Introduction | 1 |
| 3. | Procedure | 1 |
| 4. | Facts | 1 |
| 5. | Argument - Standard of Review | 3 |
| 6. | Applicable Jurisdiction and Review | 3 |
| 7. | Point I - Plaintiff's Breach of Contract Claims Are Subject to New York's Six-year Statute of Limitations | 6 |
| 8. | Point II - Plaintiff's Breach of Contract Claims Are Timely under N.Y. C.P.L.R § 213(2) | 9 |
| 9. | Plaintiff's Fraud Claim Is Pled with the Requisite Particularity | 10 |
| 10. | Plaintiff's Fraud Claim Is Distinct and Separate from The Breach of Contract Claim | 11 |
| 11. | Conclusion | 13 |

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

TABLE OF CASES

Alesayi Beverage Corp. v. Canada Dry Corp., 947 F. Supp. 658, 666-67 (S.D.N.Y. 1996) aff'd, 122 F.3d 1055 (2d Cir. 1997)

Allied Chemical Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro, 775 F.2d 476 (2d Cir.1985)

Ashcroft v. Iqbal, 556 U.S.662, 678, 129 S. Ct. 1937 (2009)

Bd. of Managers of 411 E. 53rd St. Condo. v. Dylan Carpet, Inc., 182 A.D.2d 551, 552 (1st Dept. 1992)

Bell Atl. Corp. v. Twombly, 550 U.S.544, 570 (2007)

Booth Steamship Co. v. Meier & Oelhaf Co., 262 F.2d 310, 312 (2d Cir. 1958)

Bridgestone/Firestone Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir.1996)

Capozziello v. Brasileiro, 443 F.2d 1155, 1157 (2d Cir.1971)

Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC, 09 CIV. 9092 RJS, 2012 WL 523541 (S.D.N.Y. Feb. 15, 2012)

CTI–Container Leasing v. Oceanic Operations, 682 F.2d 377, 380 n. 4 (2nd Cir.1982)

Curtis Publishing Co. v. Sheridan, 53 F.R.D. 642, 643-44 (S.D.N.Y.1971)

Derby v. Bitan, 89 A.D.3d 889, 890 (2d Dept. 2011)

Dynamics Corp. of Am. v. Int'l Harvester Co., 429 F. Supp. 341, 346 (S.D.N.Y. 1977)

Eagle Comtronics, Inc. v. Pico Products, Inc., 256 A.D.2d 1202, 1203 (4th Dept. 1998)

Fort Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 792–95 (2d Cir.1986)

Frankel v. Wolper, 181 App.Div. 485)

Freedman v. Pearlman, 706 N.Y.S.2d 405, 408-09 (2000)

Grappo v. Alitalia Linee Aeree Italiane, S.p.A., 56 F.3d 427, 434 (2d Cir. 1995)

Hess v. United States, 361 U.S. 314, 318 (1960)

Int'l Elecs., Inc. v. Media Syndication Global, Inc., No. 02 Civ. 4274(LAK), 2002 WL 1897661, at *2 (S.D.N.Y. Aug. 17, 2002)

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

In re Air Crash at Belle Harbor, New York on November 12, 2001, MDL 1448 (RWS), 2006 WL 1288298 (S.D.N.Y. May 9, 2006)

Jordan (Bermuda) Inv. Co., Ltd., 00 CIV. 9214 (RWS), 2003 WL 1751780 (S.D.N.Y. Apr. 1, 2003)

Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A., 933 F. Supp. 347, 356 (S.D.N.Y. 1996)

Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628 (1959)

Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 266 (S.D.N.Y. 2008)

Klein v. Shields & Co., 470 F.2d 1344, 1346-47 (2d Cir. 1972) (citing N.Y.Civ.Prac. Law § 213(9) (McKinney 1972)

Kossick v. United Fruit Co., 365 U.S. 731, 735, (1961)

Kristensons-Petroleum, Inc. v. Sealock Tanker Co., 02 CIV. 9222 (DC), 2005 WL 735940 (S.D.N.Y. Mar. 30, 2005) aff'd sub nom. Kristenson-Petroleum, Inc. v. Blanc Navigation, Sealock Tanker, Co., Ltd., 05-2230, 2005 WL 2899868 (2d Cir. Nov. 3, 2005)

Lehman v. Dow Jones & Co., 783 F.2d 285, 294–96 (2d Cir.1986)

Lemer v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)

Lerner v. Karageorgis Lines, Inc., 66 N.Y.2d 479 (1985)

Long Island Lighting Co. v. Gen. Elec. Co., 712 F. Supp. 292, 299 (E.D.N.Y. 1989)

Manning v. Utilities Mut. Ins. Co., Inc., 254 F.3d 387, 400-01 (2d Cir. 2001)

McNally Wellman Co. v. New York State Electric & Gas Co., 63 F.3d 1188, 1194 (2d Cir.1995)

Milau Associates v. N. Ave. Dev. Corp., 42 N.Y.2d 482, 487 (1977)

Morris v. David Lerner Assocs., 680 F. Supp. 2d 430, 435 (E.D.N.Y. 2010)

New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96 (1922)

New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 28 (2d Cir. 1997)

New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 316, 662 N.E.2d 763, 767-68 (1995)

Norfolk Shipbuilding and Drydock Corporation v. M/V Norma T., 1977 A.M.C. 103 (1976)

North American Leisure Corp. v. A & B Duplicators, Ltd., 468 F.2d 695, 697 (2d Cir. 1972)

North Pacific Steamship Co. v. Hall Marine Railway and Shipbuilding Co., 240 U.S. 119 (1919)

North Shore Bottling Co. v. Schmidt & Sons, 22 N.Y.2d 171, 179

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

Old Country Toyota Corp. v. Toyota Motor Distributors, Inc., 966 F. Supp. 167, 167 (E.D.N.Y. 1997)

Perlmutter v. Beth David Hosp., 308 N.Y. 100, 104, 123 N.E.2d 792, 794 (1954)

Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409 (1953)

Preston v. Frantz, 11 F.3d 357, 358–59 (2d Cir.1993), cert. dismissed 512 U.S. 1279 (1994)

Rays Trading (H.K.) Co. Ltd. v. Judy-Philippine, Inc., 98 CIV. 0170 (JGK), 1998 WL 355422 (S.D.N.Y. July 2, 1998)

Rich v. New York Cent. & Hudson Riv. R.R. Co., 87 N.Y. 382 (1882))

Richards v. Blake Builders Supply, Inc., 528 F.2d 745 (4th Cir.1975)

Robins v. Finestone, 308 N.Y. 543

Rubino v. Hudson River Glassworks, 90 CIV. 1439 (PNL), 1990 WL 108364 (S.D.N.Y. July 26, 1990)

Sheehy v. New Century Mortg. Corp., 690 F. Supp. 2d 51, 67 (E.D.N.Y. 2010)

Sundance Cruises Corp. v. American Bureau of Shipping, 7 F.3d 1077, 1080-81 (2d Cir.1993)

Sundance Cruises Corp. v. Am. Bureau of Shipping, 7 F.3d 1077, 1081 (2d Cir. 1993)

Szollosy v. Hyatt Corp., 208 F. Supp. 2d 205, 210 (D. Conn. 2002)

Triangle Underwriters, Inc. v. Honeywell Inc., 604 F.2d 737, 742 (2d Cir.1979)

Unitron Graphics, Inc. v. Mergenthaler Linotype Co., 75 A.D.2d 783 (1st Dept. 1980)

Vera, Inc. v. Tug Dakota, 769 F. Supp. 451, 455 (E.D.N.Y. 1991)

VTech Holdings Ltd. v. Lucent Technologies, Inc., 172 F. Supp. 2d 435, 440-41 (S.D.N.Y. 2001)

Wahlstrom v. Kawasaki Heavy Industries, Ltd., 4 F.3d 1084, 1087 (2d Cir.1993))

GLYNN MERCEP
AND PURCELL, LLP

NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

## INTRODUCTION

Defendants' Motion to Dismiss should be denied in its entirety based on the facts as pled in the Amended Complaint. The Complaint sets forth facts sufficient to establish a contract to repair subject to New York's six-year statute of limitations. As such, Plaintiff has commenced this action within the statute of limitation. Plaintiff's fraud claim is pled with sufficient particularity and is separate and distinct from his breach of contract claims, in that it is based on the collateral and extraneous misrepresentations of fact made by Defendants after the contract was entered into by the parties.

## PROCEDURE

Plaintiff commenced this action on September 30, 2011 by filing a *pro se* summons and complaint in the New York State Supreme Court for Suffolk County. On February 12, 2012, Defendants removed the action to the United States District Court, Eastern District of New York under 28 U.S.C. § 1446, within thirty days of receiving the complaint. On May 3, 2012, Plaintiff, through his attorneys, filed an amended complaint. On June 22, 2012, Defendants filed a notice of Defendants' Motion to Dismiss pursuant to Rule 12(b)(6), along with a Memorandum of Law in Support of Defendants' Motion to Dismiss.

## FACTS

This action arises from the failure of Plaintiff's two Detroit Diesel engines in his boat, "Bango." Am. Compl. ¶¶ 10-12. On or about April 27, 2001, plaintiff purchased the motor vessel, "Hidalgo", originally constructed in 1978, which he subsequently named "Bango" Am. Compl. ¶¶ 7. At the time of purchase, Hidalgo (subsequently named Bango) was equipped with two marinized twin Detroit Diesel twin 8v92TA engines installed in 1992. Am. Compl. ¶¶ 8. The foregoing engines were surveyed by Detroit Diesel in Italy and documented as in excellent condition. Am. Compl. ¶¶ 9.

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

In or about January 2002, Bango suffered a grounding and engine overheat. Am. Compl. ¶¶10. On or about November 25, 2002, Bango suffered an engine failure. Am. Compl. ¶¶ 11. ADDA's Operations Manager, Jim Gerhart, concluded that the failure was secondary to the January 2002 overheat, which conclusion he memorialized in a March 3, 2004 email. Am. Compl. ¶¶12.Thereafter, Mr. Gerhart and representatives of Detroit Diesel advised plaintiff of the relative merits of an "in frame rebuild" of the engines as opposed to re-manufacturing using the existing "core" of plaintiff's engines. Am. Compl. ¶¶ 13.

Thereafter Detroit Diesel undertook to rebuild plaintiff's engines and to restore them in a workmanlike manner at a cost of $60,000. Am. Compl. ¶¶ 14. This cost was far less than the cost of new engines Am. Compl. ¶¶ 21. Plaintiff had the engines removed from his boat and shipped to Defendants for the necessary repairs. Id. at ¶ 15. Defendants returned the engines to Plaintiff after rebuilding them using new and used parts including the identical components of Plaintiff's engines that had been shipped to Defendants Am. Compl. ¶¶ 18.

In 2003, and almost immediately the starboard engine failed. Id. at ¶¶ 17, 27-28. Over the following two years, Defendants unsuccessfully attempted numerous times to complete the repair of the engines. Id. at ¶¶ 30-35, 38-43, 45-42. By email sent October 27, 2004, Jim Gerhart, in his capacity as Operations Manager of ADDA did write to the plaintiff, David Stark, with respect to the twin Marine 8x92 Rebuilds, as follows:

> As confirmation to our recent phone conversation and your written request it is agreed that Atlantic Detroit Diesel Allison will honor and repair any warrantable engine issues you may encounter through the 2005 boating season. This applies to engine SN 8FF005040 and 8FF005041.
>                                                               Am. Compl. ¶¶ 37

Defendants asserted that the problem was with the exhaust system. Id. at ¶¶ 37, 43. Prior to Plaintiff being able to have the engine inspected by someone outside the contract, Defendants had key parts removed from the engine. Id. at ¶ 46. Based on Defendants' 2005 statements,

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

-2-

Plaintiff abandoned the repair and use of Bango and donated the same to charity. Id. at ¶ 61.

## ARGUMENT
## STANDARD OF REVIEW

A motion to dismiss pursuant to 12(b)(6) will be unsuccessful if the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.662, 678, 129 S. Ct. 1937 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S.544, 570 (2007)). In Ashcroft v. Iqbal, the Court set forth a two pronged approach for deciding motions to dismiss. Id. at 679. First, "District courts are to… 'identify[] pleadings that, because they are no more than conclusion, are not entitled to the assumption of truth…[and s]econd, if a complaint contains 'well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Morris v. David Lerner Assocs., 680 F. Supp. 2d 430, 435 (E.D.N.Y. 2010) (citing Iqbal at 1950). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

## APPLICABLE JURISDICTION AND LAW

The case was removed on diversity grounds and Plaintiff concedes that there is complete diversity in this case based. It is also likely that the Court's maritime jurisdiction is in play. It is well established that a controversy dealing with a maritime contract, such as "a contract to repair or rebuild a ship," falls within the court's admiralty jurisdiction under 28 U.S.C. § 1333. Vera, Inc. v. Tug Dakota, 769 F. Supp. 451, 455 (E.D.N.Y. 1991); see also, Kossick v. United Fruit Co., 365 U.S. 731, 735, (1961) (noting that contracts to hire, repair, or insure vessels are maritime contracts within the admiralty jurisdiction of the federal courts) ; New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96 (1922); North Pacific Steamship Co. v. Hall Marine Railway and Shipbuilding Co., 240 U.S. 119 (1919) (a contract for repair of a vessel already launched is a maritime contract which invokes the admiralty and maritime jurisdiction of a federal court); New Moon Shipping Co., Ltd. v. MAN B

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

-3-

& W Diesel AG, 121 F.3d 24, 28 (2d Cir. 1997) ("claim arising out of a contract to repair a ship falls squarely within a federal court's admiralty jurisdiction under 28 U.S.C. § 1333."); Sundance Cruises Corp. v. American Bureau of Shipping, 7 F.3d 1077, 1080-81 (2d Cir.1993); CTI–Container Leasing v. Oceanic Operations, 682 F.2d 377, 380 n. 4 (2nd Cir.1982); Booth Steamship Co. v. Meier & Oelhaf Co., 262 F.2d 310, 312 (2d Cir. 1958) ("It has been long established that contracts for the repair of vessels are maritime contracts."). Further, the court's admiralty jurisdiction applies to the repair of non-commercial vessels that are used on navigable waters. Rubino v. Hudson River Glassworks, 90 CIV. 1439 (PNL), 1990 WL 108364 (S.D.N.Y. July 26, 1990); see also Norfolk Shipbuilding and Drydock Corporation v. M/V Norma T., 1977 A.M.C. 103 (1976) (a contract for repairs on a pleasure craft used in navigable waters is within maritime and admiralty jurisdiction); Richards v. Blake Builders Supply, Inc., 528 F.2d 745 (4th Cir.1975).

Despite Defendants' statement in their Motion to Dismiss asserting that Plaintiff's claims arise under New York law, see Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, p.6 fn. 2, it has been consistently held that regardless of what jurisdiction has been stated in the pleadings, both federal maritime law and New York law require "application of federal maritime law to maritime cases." Sundance Cruises Corp. v. Am. Bureau of Shipping, 7 F.3d 1077, 1081 (2d Cir. 1993) (citing Hess v. United States, 361 U.S. 314, 318 (1960) (state must look to maritime law to resolve claim for wrongful death which occurred on navigable waters); Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628 (1959) (if maritime action had been brought in state court, "reference to admiralty law would have been necessary to determine the rights and liabilities of the parties"); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409 (1953) (federal maritime law controls any claim rooted in admiralty); Allied Chemical Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro, 775 F.2d 476 (2d Cir.1985) (suit involving claims by shipper against ocean carrier for breach of contract was within the court's admiralty jurisdiction and was governed by federal maritime law); Lerner v. Karageorgis Lines, Inc., 66 N.Y.2d 479 (1985) (state courts in

GLYNN MERCEP
AND PURCELL, LLP

NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

maritime cases must apply federal law to secure single and uniform body of maritime law)).

Moreover, absent reference to admiralty jurisdiction or maritime law in the pleadings, "the court would be obligated to raise the jurisdictional issue *sua sponte* even if not addressed by the parties."  In re Air Crash at Belle Harbor, New York on November 12, 2001, MDL 1448 (RWS), 2006 WL 1288298 (S.D.N.Y. May 9, 2006) (citing *Wahlstrom v. Kawasaki Heavy Industries, Ltd.*, 4 F.3d 1084, 1087 (2d Cir.1993)); see also Preston v. Frantz, 11 F.3d 357, 358–59 (2d Cir.1993) ("When, as in this case, plaintiffs bring a suit based upon diversity jurisdiction, we nevertheless apply substantive federal maritime law if we have admiralty jurisdiction."), cert. dismissed 512 U.S. 1279 (1994); Capozziello v. Brasileiro, 443 F.2d 1155, 1157 (2d Cir.1971) ("That the district court's diversity, rather than its admiralty, has been invoked does not change the applicable [maritime] law."); Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC, 09 CIV. 9092 RJS, 2012 WL 523541 (S.D.N.Y. Feb. 15, 2012) ("even if Plaintiffs had not alleged maritime jurisdiction, the substantive law of admiralty would apply nonetheless."); Szollosy v. Hyatt Corp., 208 F. Supp. 2d 205, 210 (D. Conn. 2002) (finding pleading of claim as admiralty "unnecessary.").

Therefore, regardless of where the present action was commenced, or what jurisdiction or law Defendants have referred to in their pre-motion letters, see Memorandum of Law in Support of Defendants' Motion to Dismiss, p.6 n.2, this action squarely falls under the court's admiralty jurisdiction and is subject to application of maritime law.

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

## POINT I
## PLAINTIFF'S BREACH OF CONTRACT CLAIMS ARE SUBJECT TO NEW YORK'S SIX-YEAR STATUTE OF LIMITATIONS

Under New York law, a contract in which "service predominates" and the sale of items is "incidental" is deemed a "service contract" and has a six year statute of limitations under N.Y. C.P.L.R. § 213(2), whereas a "sales contract" is subject to the four-year statute of limitations under N.Y. U.C.C. § 2-275(1). Triangle Underwriters, Inc. v. Honeywell Inc., 604 F.2d 737, 742 (2d Cir.1979); North American Leisure Corp. v. A & B Duplicators, Ltd., 468 F.2d 695, 697 (2d Cir. 1972); Old Country Toyota Corp. v. Toyota Motor Distributors, Inc., 966 F. Supp. 167, 167 (E.D.N.Y. 1997); Long Island Lighting Co. v. Gen. Elec. Co., 712 F. Supp. 292, 299 (E.D.N.Y. 1989); Dynamics Corp. of Am. v. Int'l Harvester Co., 429 F. Supp. 341, 346 (S.D.N.Y. 1977); Curtis Publishing Co. v. Sheridan, 53 F.R.D. 642, 643-44 (S.D.N.Y.1971); Perlmutter v. Beth David Hosp., 308 N.Y. 100, 104, 123 N.E.2d 792, 794 (1954). The focus of the analysis "depends heavily on the facts and terms peculiar to that contract." Alesayi Beverage Corp. v. Canada Dry Corp., 947 F. Supp. 658, 666-67 (S.D.N.Y. 1996) aff'd, 122 F.3d 1055 (2d Cir. 1997) (citing McNally Wellman Co. v. New York State Electric & Gas Co., 63 F.3d 1188, 1194 (2d Cir.1995) (resting the determination of the applicable statute of limitations period on the essential terms and consequences of the contract)).

In the present case, the terms of the contract were for Plaintiff to pay Defendants $60,000 in exchange for the repair of his twin engines that he had removed and shipped to Defendants for repair. Am. Compl. ¶¶ 13-16. This price for services, along with Plaintiff's repeated expense of removing and shipping the engines to Defendants for completion of the repair services, are indicative of a contract for repairs, rather than a contract for the sale of goods. See Complaint of Am. Exp. Lines, Inc., 620 F. Supp. 490, 515 (S.D.N.Y. 1985) ("the same claim for a service *such as repair* would be governed by the limitation period for service contracts [i.e., six years]."

GLYNN MERCEP
AND PURCELL, LLP

NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

(emphasis added)).

Here, Defendants attempt to construe the contract as one for the sale of goods rather than for services based on Defendants "(i) delivery to Plaintiff of a completed product; (ii) Defendants' limited ongoing role in installing or operating the product; and (iii) Defendants' apparent lack of compensation apart from the product's purchase price." <u>Memorandum of Law in Support of Defendant's Motion to Dismiss</u>, p.7 (citations omitted). However, the "completed product" Defendants refer to were the two engines Plaintiff had removed and shipped, at his expense, to Defendants to be repaired. <u>Am. Compl.</u> ¶¶ 15, 32, 38, 44, 42. Further, the "ongoing role in installing or operating" the twin engines was limited solely to attempts by Defendants to fully perform their part of the contract, that is, the repair of the engines. <u>Am. Compl.</u> ¶¶ 27, 29, 31, 33, 34, 39, 41, 42, 43, 45, 43. Finally, in regard to any "apparent lack of compensation," Plaintiff, pursuant to his obligation under the service contract, paid Defendants "sixty thousand ($60,000) to have his engines rebuilt," <u>Am. Compl.</u> ¶ 24, whereas Defendants have never completed the services called for under the contract.

It is well established that "where the party rendering services can be shown to have expressly bound itself to the accomplishment of a particular result, the courts will enforce that promise." <u>Milau Associates v. N. Ave. Dev. Corp.</u>, 42 N.Y.2d 482, 487 (1977) (citing <u>Robins v. Finestone</u>, 308 N.Y. 543; <u>Frankel v. Wolper</u>, 181 App.Div. 485); <u>see also</u> <u>Derby v. Bitan</u>, 89 A.D.3d 889, 890 (2d Dept. 2011). Here, Defendants agreed to repair the twin engines of Plaintiff, and having failed to do such, Plaintiff is entitled to damages.

In <u>Stafford v. Int'l Harvester Co.</u>, 668 F.2d 142, 146 (2d Cir. 1981), the court held that a contract to repair a truck "to be a service contract despite the incidental transfer of property used in rendering the service." In <u>Stafford</u>, the plaintiff had his truck towed to the defendant's shop for repairs after it was in an accident. <u>Id.</u> During the performance of the repair service, the defendants replaced some of the parts in the truck with new parts, and subsequently claimed the use of new

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

-7-

and old parts transformed the contract into a sales contract governed by the UCC. Id. The District Court disagreed, as did the Second Circuit on appeal, and found the "underlying nature of the transaction was therefore that of a contract for repairs" rather than a contract for the sale of goods. Id. at 143.

Here, just like in Stafford, Plaintiff had his property delivered to Defendants to be repaired after an accident. Am. Compl. ¶¶ 13-16. Defendants have argued that they delivered "two 'remanufactured' engines – that is, engines that were produced, and not merely serviced." Memorandum in Support of Defendants' Motion to Dismiss, p. 9. Defendants point to the use of terms in Plaintiff's original *pro se* Complaint, such as "purchase agreement," "built and refurbished," "during the warranty period," and "the defective manufactured engine," see id. at 10, to indicate the presence of a sales contract. However, the proper analysis does not focus on the language a *pro se* plaintiff utilizes in drafting a complaint, but rather on the "underlying nature of the transaction" between the parties. Here, just like in Stafford, the underlying nature of the contract was "that of a contract for repairs" and therefore falls squarely under the contract for services governed by the CPLR.

As to Defendants' attempt to paint the factual statements made by Plaintiff in his Amended Complaint as contradictory to those in his original *pro se* Complaint and therefore ask this court to "credit Plaintiff's original factual allegations." See Memorandum of Law in Support of Defendants' Motion to Dismiss, p. 10 (citing Collton, 2008 WL 4386764), Plaintiff asserts that any "changes" in the Amended Complaint are for clarification purposes and do not result in directly contradictory statements. See Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 266 (S.D.N.Y. 2008) (refusing to credit statements in Amended Complaint since the changes, "when taken as a whole, [are] not "blatant" or "directly contradict[ory]," and can be described as clarifying but, at most, as inconsistent.").

It has consistently been held that a contract to repair a vessel is a maritime contract and

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

thus an analysis under the doctrine of laches requires the use of New York's six year statute of limitations since the contract is properly viewed as one for services rather than for goods. See Complaint of Am. Exp. Lines, Inc., 620 F. Supp. 490, 514-15 (S.D.N.Y. 1985) (finding six year statute of limitations for contracts for "service such as repair" applicable rather than four year limit for sale of goods); Kristensons-Petroleum, Inc. v. Sealock Tanker Co., 02 CIV. 9222 (DC), 2005 WL 735940 (S.D.N.Y. Mar. 30, 2005) aff'd sub nom. Kristenson-Petroleum, Inc. v. Blanc Navigation, Sealock Tanker, Co., Ltd., 05-2230, 2005 WL 2899868 (2d Cir. Nov. 3, 2005) (applying New York's six year statute of limitations for contract claims).

### POINT II
### PLAINTIFF'S BREACH OF CONTRACT CLAIMS ARE TIMELY UNDER N.Y. C.P.L.R § 213(2)

In the instant case, Plaintiff's actions are timely under N.Y. C.P.L.R. § 213(2)'s six year statute of limitation. Defendant agreed to stand behind the repair until the end of 2005 boating season and failed to make good the promise within that time. Unitron Graphics, Inc. v. Mergenthaler Linotype Co., 75 A.D.2d 783 (1st Dept. 1980) (finding accrual date for breach of contract claim "when the installation was completed."). Thus, the accrual date for the breach of contract claims was effectively October 1, 2005, as per the statements made by Defendant via email on October 27, 2004. Am. Compl. ¶37.

Although Defendants argue in their Memorandum that this would only be the accrual date if it were viewed as an extended warranty, see Memorandum in Support of Defendants' Motion to Dismiss, p. 15, n.3, this "extension" was not a warranty on a product sold but a warranty on the repair. Thus, the statute of limitations accrued on at the end of the "2005 boating season" which certainly extends (and Mr. Szanyi has agreed) in the Northeast through October of 2005. Thus measuring from November 1, 2005, Plaintiff timely commenced this action by filing a summons and

GLYNN MERCEP
AND PURCELL, LLP

NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

-9-

complaint on September 30, 2011. [1]

### **PLAINTIFF'S FRAUD CLAIM IS PLED WITH THE REQUISITE PARTICULARITY**

The statute of limitations for fraud under New York law is six years from "the time the plaintiff 'discovered the fraud, *or could with reasonable diligence have discovered it*', whichever is earlier." Klein v. Shields & Co., 470 F.2d 1344, 1346-47 (2d Cir. 1972) (citing N.Y.Civ.Prac. Law § 213(9) (McKinney 1972) (emphasis added)). A complaint containing an action in fraud must satisfy the heightened pleading requirement of Fed. R. Civ. P. 9(b). This rule requires the complaint to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lemer v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (citations omitted).

However, courts have found pleadings sufficient despite complete specificity with regard to each of the elements of the fraud claim. Sheehy v. New Century Mortg. Corp., 690 F. Supp. 2d 51, 67 (E.D.N.Y. 2010) (denying summary judgment despite fact that "plaintiff's complaint does not allege the fraudulent misrepresentations with specificity."); Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A., 933 F. Supp. 347, 356 (S.D.N.Y. 1996) (describing a complaint lacking specificity as to all alleged misstatements and failing to identify the speaker as having "minor deficiencies"). Furthermore, "that the fraud allegations do not identify **1024 and distinguish between the two individual defendants is of no consequence since the complaint as a whole, adequately alleges a scheme involving both defendants."Bd. of Managers of 411 E. 53rd St. Condo. v. Dylan Carpet, Inc., 182 A.D.2d 551, 552 (1st Dept. 1992).

Here, the complaint is sufficient in its specificity to put Defendants on notice as to what the fraudulent misrepresentations were, who made them, when they were made, and why they were fraudulent. Am. Compl. ¶¶ 43-46, 57-61. Further, based on the fact of the spoliation of evidence,

---

[1] Even assuming that these contract claims arise under the UCC, the Defendants' motion should still be denied since the required application of maritime contract law merely utilizes the state's statute of limitations as a "rule of thumb" in determining whether or not the doctrine of laches defense should defeat the claim, and emphasizes the equitable nature of the doctrine of laches. See DeSilvio v. Prudential Lines, Inc., 701 F.2d 13 (2d Cir.1983)

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

no amount of diligence could have resulted in Plaintiff discovering the true cause of the engine failures. Am. Plead. ¶ 43-46.

### PLAINTIFF'S FRAUD CLAIM IS DISTINCT AND SEPARATE FROM THE BREACH OF CONTRACT CLAIM

A fraud claim is not duplicative of a breach of contract claim where "the plaintiff alleges that the defendant engaged in other fraudulent conduct besides entering the contract with no intention to perform." Grappo v. Alitalia Linee Aeree Italiane, S.p.A., 56 F.3d 427, 434 (2d Cir. 1995); See e.g., Fort Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 792–95 (2d Cir.1986); Lehman v. Dow Jones & Co., 783 F.2d 285, 294–96 (2d Cir.1986); VTech Holdings Ltd. v. Lucent Technologies, Inc., 172 F. Supp. 2d 435, 440-41 (S.D.N.Y. 2001). Moreover, "misrepresentations made after a contract is entered into which relate to a present fact that would exist if the contract were performed, are collateral or extraneous to the contract…and are actionable in fraud." Jordan (Bermuda) Inv. Co., Ltd., 00 CIV. 9214 (RWS), 2003 WL 1751780 (S.D.N.Y. Apr. 1, 2003) (citing Int'l Elecs., Inc. v. Media Syndication Global, Inc., No. 02 Civ. 4274(LAK), 2002 WL 1897661, at *2 (S.D.N.Y. Aug. 17, 2002); Freedman v. Pearlman, 706 N.Y.S.2d 405, 408-09 (2000); Eagle Comtronics, Inc. v. Pico Products, Inc., 256 A.D.2d 1202, 1203 (4th Dept. 1998) (allegations that, "after the contract was entered into, defendant repeatedly misrepresented or concealed existing facts," constituted discrete conduct.));

Here, Plaintiff's contract claim is based on Defendant's failure to perform the repairs to the engines as per the agreement with Plaintiff. Am. Compl. ¶ 14. On the other hand, Plaintiff's fraud claim is based on Defendants' statements that the problem with the boat was with the exhaust system rather than the poor workmanship Defendants had performed on the engine. Id. at ¶ 43. This statement made in 2005 pertained to a present fact, long after the original contract had been formed, as well as the subsequent spoliation of the parts essential for verification of the actual cause of the engine failure, was an attempt by Defendants to conceal the fact that they breached

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

-11-

the original contract. This is distinct from the contract claim in that the contract claim asserts they did not repair the engines, whereas the fraud claim asserts that they concealed the fact that they did not repair the engines. In Grappo, the Second Circuit found distinct fraud and contract claims existed where the plaintiff alleged that the defendant "engaged in fraud independent of the contract by reporting that the contract had been approved, when he knew that it had not." Grappo, 56 F.3d at 434.

The Second Circuit has held that, under New York law, a fraud claim associated with a breach of contract can be sustained where the plaintiff can "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract." Bridgestone/Firestone Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir.1996). Furthermore, "where a party engages in conduct outside the contract but intended to defeat the contract, its extraneous conduct may support an independent tort claim." New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 316, 662 N.E.2d 763, 767-68 (1995) (citing North Shore Bottling Co. v. Schmidt & Sons, 22 N.Y.2d 171, 179; Rich v. New York Cent. & Hudson Riv. R.R. Co., 87 N.Y. 382 (1882)); see also Manning v. Utilities Mut. Ins. Co., Inc., 254 F.3d 387, 400-01 (2d Cir. 2001); Rays Trading (H.K.) Co. Ltd. v. Judy-Philippine, Inc., 98 CIV. 0170 (JGK), 1998 WL 355422 (S.D.N.Y. July 2, 1998).

In the instant case, Defendants misrepresented the true nature of the problem with Plaintiff's engines, then subsequently removed and spoliated the parts in question. The contract required Defendants to repair Plaintiff's engines, and therefore, the misrepresentation as to the cause of the problem and the removal of certain parts of the engine, can reasonably be viewed as an attempt by Defendants to defeat the contract as well as being deemed extraneous conduct to the contract. As such, Plaintiff's fraud claim is separate and distinct from his breach of contract claims.

GLYNN MERCEP
AND PURCELL, LLP
NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757

## CONCLUSION

Defendants' Motion to Dismiss should be denied in its entirety based on the facts as pled in the Amended Complaint.

WHEREFORE, for the foregoing reasons, it is respectfully requested that Defendants' Motion to Dismiss should be denied in its entirety.

Timothy B. Glynn (TG5356)

TO:

WEBSTER SZANYI, LLP
Attorneys for Defendants
DETROIT DIESEL CORP. and
ATLANTIC DETROIT DIESEL ALLISON, LLC
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800
Via ECF
kszanyi@websterszanyi.com

GLYNN MERCEP
AND PURCELL, LLP

NORTH COUNTRY ROAD
P.O. BOX 712
STONY BROOK, N.Y. 11790-0712
(631) 751-5757